IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF ROBERT LEE BROWN, Norman Laister, *Administrator ad Litem*, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Case No.: 2:17cv634-MHT-SMD<br>) |
| SHERWOOD BRITT COX, *et al.*, | )<br>) |
| Defendants. | ) |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

**I.     INTRODUCTION**

This case arises from a traffic accident in Chilton County, Alabama, involving a tractor-trailer and a pick-up truck. The driver of the pick-up, Robert Lee Brown ("Brown"), filed a complaint against the driver of the tractor-trailer, Sherwood Britt Cox ("Cox"), and his employer, Daybreak Express, LLC ("Daybreak"), invoking this court's diversity jurisdiction. Complaint (Doc. 1) at ¶¶ 4-8. Mr. Brown died on October 9, 2017, *see* (Doc. 16), and the complaint was amended to add a wrongful death count and substitute his estate as plaintiff. Amd. Compl. (Doc. 24) at ¶¶ 1, 40-43. Plaintiff's amended complaint asserts a variety of negligence and wantonness claims against Defendants Daybreak and Cox, as well as a wrongful death count based upon these same claims. *Id.* at pp. 3-12.

Defendants have not moved for summary judgment on Count One, the underlying

claim alleging that Daybreak's driver Cox was negligent/wanton in his operation of the tractor-trailer while acting as an agent of Daybreak, or Count Five, a separate count alleging agency.  Mot. For Partial S.J. (Doc. 48) at 1-2; Pl's Resp. (Doc. # 50) at 11. Rather, Defendants' motion is limited to Plaintiff's claims for negligent and wanton maintenance, inspection, repair, supervision, hiring and training (Counts Two, Three, Four, Six, Seven, and Eight) as well as the wrongful death count based upon these claims (Count Nine). Mot. For Partial S.J. (Doc. 48).  Plaintiff stipulates that summary judgment is appropriate on his claims for negligent/wanton maintenance, inspection, repair, supervision, and training (Counts Two, Three, Four, Six, and Eight), and only opposes summary judgment on his negligent/wanton hiring claim (Count Seven).  Pl's Resp. (Doc. # 50) at 11.

Comparison of the elements of Counts One and Seven shows that Count Seven is redundant.   In addition, Plaintiff lacks sufficient probative evidence to satisfy his burden on the remaining elements of a negligent/wanton hiring claim under Alabama law.

ACCORDINGLY, for the reasons stated below, undersigned RECOMMENDS that Defendants' motion for partial summary judgment (Doc. 50) be GRANTED and that Counts Two, Three, Four, Six, Seven, Eight, and Nine as it relates to negligent/wanton maintenance, inspection, repair, supervision, hiring, and training be DISMISSED.[1]

II.     **Plaintiff's Stipulation**

---

[1] The United States District Judge referred this case to the United States Magistrate Judge on November 29, 2017, "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." Order (Doc. 14).

Defendants Cox and Daybreak move for partial summary judgment as to the following claims:

1. Count Two – Negligent/Wanton Maintenance
2. Count Three – Negligent/Wanton Inspection
3. Count Four – Negligent/Wanton Repair
4. Count Six – Negligent/Wanton Supervision
5. Count Seven – Negligent/Wanton Hiring
6. Count Eight – Negligent/Wanton Training
7. Count Nine – "Claim for wrongful death based on wanton conduct and there claims stated in Sections A-H related to negligent/wanton maintenance, inspection, repair, supervision, hiring, training, and failure to properly follow applicable regulations."

Defendants do not move for summary judgment on Count One—Negligent/Wanton operation of the 18-wheel truck by Defendnt Cox while acting in his capacity as agent and/or employee of Defendant Daybreak, or Count Five—Defendant Cox was acting as an agent and employee of Defendant Daybreak within the line and scope of his authority. Defs' Mot. Partial. S.J. (Doc. 48) at 1-2; Amd. Compl. (Doc. 28) at 3-4, 6.

Plaintiff, after reviewing Defendants' arguments and evidence related to their motion for partial summary judgment, "stipulates that summary judgment is appropriate as to the claims of Negligent/Wanton Maintenance, Negligent/Wanton Inspection,

Negligent/Wanton Repair, Negligent/Wanton Supervision, Negligent/Wanton Training, as well as with respect to the Wrongful Death aspects of those five claims." (Doc. 50) at 11. However, "Plaintiff opposes Defendants' motion for partial summary judgment only as to the claims of Negligent/Wanton Hiring and the claim of Wrongful Death based on the theory of Negligent/Wanton Hiring[.]" *Id.*  Per plaintiff's stipulation, the undersigned recommends that Counts Two, Three, Four, Six, Eight, and Nine as it relates to negligent/wanton maintenance, inspection, repair, supervision, hiring, and training be dismissed.  The remaining discussion is limited to Count Seven, Plaintiff's negligent/wanton hiring claim.

### III. LEGAL STANDARD

**Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court explains that '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "  *Id.* at 322.

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 255 (1986). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## IV.   THE SUMMARY JUDGMENT RECORD

### A.   Undisputed Facts Related to the Underlying Accident

The summary judgment record shows the following undisputed facts related to the underlying accident. On September 19, 2017, Defendant Cox, a tractor-trailer driver working for Defendant Daybreak, was traveling along Interstate 65 in Chilton County, Alabama. (Doc. 50-3) at 1. At approximately 1:40 p.m., his tractor-trailer collided with plaintiff, who was driving a pick-up truck. *Id*. As a result of the accident, Plaintiff

sustained injuries. (Doc. 50-3) at 2-3.  Plaintiff died on October 9, 2017. (Doc. 16-1) at 1.

### B.   Undisputed Facts Concerning Daybreak's Hiring of Cox

The summary judgment record shows the following undisputed facts related to Daybreak's hiring of Cox.  On May 31, 2016, Cox submitted an application for employment with Daybreak. (Doc. 48-2) at 3. As part of his application, Cox completed multiple forms, one of which was an employment history form. *See id.* at 5. On that form, Cox reported the names of his five previous employers, dating back to March 2004. *Id.* Cox also completed a form related to his driving record. *See id.* at 6. On that form, Cox reported no accidents within the past three years and one speeding violation in June 2013. *Id.* Further, Cox completed a supplemental questionnaire form that addressed prior criminal convictions and past criminal activity, as well as drug and alcohol abuse. *Id.* at 8. Cox noted no criminal history or substance abuse on the form. *Id.*

On June 21, 2016, Daybreak performed a road test with Cox. *Id.* at 25-26. Cox was assessed as satisfactory, reflecting the highest score listed on the assessment's rating scale. *Id.* at 26.  Cox also submitted to a medical examination at or around that time. *Id.* at 28. That examination found Cox medically qualified for employment based upon his drug screen and blood alcohol test. *Id.* Cox submitted to an additional Department of Transportation ("DOT") medical assessment, which determined that Cox was qualified for employment with Defendant Daybreak based upon the Federal Motor Carrier Safety

Regulations ("FMCSR"). *Id*. at 27. Finally, Cox completed a form on June 21, 2016, that sought the report of any traffic violations committed by Cox within the last twelve months. *Id*. at 12.   Cox reported no violations. *Id*.

Under the FMCSR, the DOT requires employers, including Daybreak, to make certain "investigations and inquiries" with respect to the drivers they employ. *See* (Doc. 50-2) at 19 (testimony acknowledging that Daybreak is subject to DOT requirements regarding employment verifications); 49 C.F.R. § 391.23. These requirements include "[a]n investigation of the driver's safety performance history with Department of Transportation regulated employers during the preceding three years." 49 C.F.R. § 391.23(a)(2). Replies and responses to the requests from previous DOT-regulated employers must be placed in the motor carrier's driver investigation history file, and if no response is received, the carrier's good faith efforts to obtain the information must be documented. 49 C.F.R. § 391.23(c)(1). Per the regulation, "[f]ailures to contact a previous employer, or of them to provide the required safety performance history information, must be documented" and that record maintained. *Id*. at § 391.23(c)(1)(2).

Within a three-year period prior to Cox's employment with Daybreak, Cox was employed by (1) CPC Logistics, (2) Longistics, and (3) Mountaire Farms. (Doc. 48-2) at 5. Daybreak requested information from CPC Logistics, Cox's most recent previous employer. (Doc. 48-2) at 57; (Doc. 50-2) at 19. However, CPC Logistics never responded to Daybreak's request for information. (Doc. 50-2) at 19 (testimony from Daybreak's

7

Director of Fleet Management and Safety that no response to Daybreak's inquiry was returned by CPC Logistics). There is no evidence in Cox's file that Daybreak followed up with CPC Logistics regarding the requested information. *Id*. at 85 (testimony from same that there is no evidence that follow-up was initiated with CPC Logistics).

As to Cox's next previous employer, Longistics, information regarding Cox's employment was reported to Daybreak through a system known as HireRight. *See id*. at 77. The information provided by HireRight shows that Cox's record while employed with Logistics was unremarkable.[2] (Doc. 48-2) at 20.

Finally, as to Mountaire Farms, Daybreak does not have any records indicating that it requested Cox's safety performance history from Mountaire or that it was reported through HireRight. (Doc. 50-2) at 90.

In May 2014, while employed by Mountaire Farms, Cox was placed on a ten-week hiatus from driving a commercial vehicle because of sleep apnea. (Doc. 50-4) at 41. Around that time, Cox was diagnosed with chronic obstructive sleep apnea and prescribed a CPAP machine. *Id*. Cox's DOT card was pulled by Mountaire's DOT physician, and the reason listed for pulling the card was chronic obstructive sleep apnea. *Id*. at 43. Cox was cleared to return to work on July 29, 2014. *Id*. Cox did not inform Daybreak, prior to his hiring, that he had been diagnosed with a sleep disorder or that he had missed work within the last two years due to sleep apnea. *Id*. at 45. Cox has not

---

[2] While the information reported on HireRight appears to simply provide general employment information, testimony indicates that, if Cox had any positive drug screen tests, accidents, etc., while employed with Longistics, those infractions would appear on the HireRight report. (Doc. 50-2) at 20.

used the CPAP machine prescribed for treatment of his sleep apnea since leaving his employment with Mountaire. (Doc. 50-4) at 187.

## V. DISCUSSION

**Plaintiff's Negligent/Wanton Hiring Claim**

A brief review of the governing law is helpful in understanding Plaintiff's negligent/wanton hiring claim. Under the *Erie* doctrine, a federal court exercising diversity jurisdiction must apply the substantive law of the state where it sits, including its choice of law rules. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, (1938) (finding that a federal court sitting in diversity must apply the substantive law of the state in which it sits); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) ("Federal courts sitting in diversity apply the forum state's choice-of-law rules). To determine state substantive law, the federal court follows the rulings of the state's highest court, in this case the Alabama Supreme Court. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). When the state's highest court has not decided an issue, the federal court "must predict how the highest court would decide th[e] case." *Id.*

For actions sounding in tort, Alabama's choice of law rule is the doctrine of *lex loci delicti*, or the "law of the place of injury." *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 823 (Ala. 1991). Under this rule, "an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Id.* at 820. Therefore, regardless of where Daybreak hired Cox, plaintiff's

injury occurred in Chilton County, Alabama, and Alabama's law regarding negligent/wanton hiring controls.

Under Alabama law, to establish a claim for negligent/wanton hiring of a driver, plaintiff must establish the following elements: (1) that the driver was incompetent; (2) that the employer knew or reasonably should have known that the driver was incompetent; (3) that the employer failed to exercise reasonable care in hiring the driver after being placed on notice that he was an incompetent driver; and (4) that the employer's negligence was the legal or proximate cause of the plaintiff's injuries. *Jones Express, Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010). *See also, Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005) (elements of closely-related tort of negligent/wanton entrustment are (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages).

### A.     Plaintiff's Negligent Hiring Claim is Redundant

As an initial matter, plaintiff's negligent/wanton hiring claim (Count Seven) is redundant of his negligence/wantonness claim (Count One) and should be dismissed on this ground alone. Rule 12(f) allows a court, on motion or on its own, to strike any redundant matter from a pleading. Fed. R. Civ. P. 12(f). "'Redundant' matter consists of allegations that constitute a needless repetition of other averments." *Moore v. City of Selma, Ala.*, Civil Action No. 14-212-CG-C, 2015 WL 7708771, at * 4 (S.D. Ala. 2015)

(*quoting* 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1382 at 704 (1990)).

Negligent hiring is not an independent tort. Under Alabama law, "'[t]o sustain a claim for negligent or wanton hiring, training and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort.'" *Hunt v. 21st Mortg. Corp.*, Civil Action No. 2:12-cv-2697-WMA, 2014 WL 426275, at *9 (N.D. Ala.2014)(*quoting Leahey v. Franklin Collection Serv.*, Inc., 756 F. Supp. 2d 1322, 1328-29 (N.D. Ala. 2010)). The Alabama Supreme Court has directly held that a jury cannot return a verdict against a trucking company on a negligent hiring claim without finding that its driver was negligent in causing the accident. *Jones Express*, 866 So. 2d at 306. When an employer does not challenge agency, a negligent hiring claim is redundant of the underlying negligence claim and should be dismissed. *Hunt*, 2014 WL 426275, at *9.

In this case, as an element of his negligent/wanton hiring claim, plaintiff must establish that Cox was negligent/wanton in his operation of the tractor-trailer at the time of the accident. *Jones Express,* 86 So. 2d at 306. This is the underlying issue in the case as pleaded in Count One. Amd. Compl. (Doc. 28) at 3-4. Daybreak is not challenging its driver's agency, and if plaintiff establishes Cox's negligence/wantonness, he will have won his case and be entitled to recover his damages from Daybreak under the doctrine of *respondeat superior*. If, on the other hand, plaintiff fails to establish this

element, he cannot recover from Daybreak on Count One or on his negligent/wanton hiring claim (Count Seven). Establishing the other elements necessary to prove a negligent/wanton hiring claim is completely unnecessary to prevail against Daybreak, and the two claims are totally redundant. *Hunt*, 2014 WL 426275, at *9. Accordingly, Count Seven is due to be dismissed pursuant to Rule 12(f).

### B. Remaining Elements of Negligent/Wanton Hiring Claim

#### (1) Incompetentcy

Having determined that Count Seven is redundant, the court will nevertheless briefly address Plaintiff's evidence on the remaining elements of a negligent/wanton hiring claim under Alabama law. The Alabama Supreme Court instructs that "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC,* 921 So. 2d 409, 413-414 (Ala. 2005). *See also, Britt v. USA Truck, Inc.,* Civil Action No. 2:06cv868-ID (WO), 2007 WL 4554027, at *5 (M.D. Ala. 2007) (unreported)(favorably citing *Halford*). Proof of a driver's incompetency "may be established by evidence of previous acts of negligent or reckless driving . . . previous accidents, or previous acts of driving while intoxicated." *Edwards v. Valentine,* 926 So. 2d 315, 322 (Ala. 2005). Plaintiff must show that the driver was "unable or unlikely to have operated the motor vehicle with reasonable safety[.]" *Id.*

Here, defendants' evidence shows that Cox had a valid commercial driver's

license.  (Docs. 48 & 50) at ¶¶ 2(1).  He performed a road test with Daybreak on June 21, 2016, and received a satisfactory assessment, the highest score possible on the assessment's rating scale.  (Doc. 48-2) at 25-26.  Moreover, his driving record showed no accidents in the previous three years and a single citation for speeding.  (Doc. 48-2) at 6.  Plaintiff does not dispute any of this evidence of Cox's demonstrated ability to properly drive a tractor-trailer, nor does he adduce any evidence of previous bad driving.  *See* Pl's Resp. (Doc. 50) at 7-10.

Instead, plaintiff argues that Cox was incompetent to drive a tractor-trailer because he had untreated sleep apnea, which he claims is a disqualifying medical condition under § 391.41 of the FMCSR.  Pl's Resp. (Doc. 50) at 14-16.  This federal regulation establishes physical qualifications for drivers of commercial vehicles.  49 C.F.R. § 391.41.  Among its provisions, the regulation states that a driver must have "no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his/her ability to control and drive a commercial motor vehicle safely[.]" 49 C.F.R. § 391.41 (b)(5).

The undisputed evidence here shows that Cox received an obstructive sleep apnea diagnosis in 2014, and that he did not comply with his prescribed treatment of using a CPAP machine while sleeping.  Pl's Resp. (Doc. 50-4) at 41-45, 187.  Sleep apnea is "a disorder where the upper airway closes either partially or completely during sleep, leading to breathing cessation for ten seconds or longer.  Symptoms include restlessness,

snoring, recurrent awakening, morning headache, and excessive daytime sleepiness." *Achey v. Crete Carrier Corp.*, Civil Action No. 07-cv-3592, 2009 WL 9083282, at * 3 n.2 (E.D. Penn. March 30, 2009) (citing *The Merck Manual,* § 5 at 499 (18th ed. 2006)(internal quotation marks omitted).

The FMCSR's Medical Advisory Criteria explains that "[s]ince a driver must be alert at all times, any change in his or her mental state is in direct conflict with highway safety. Even the slightest impairment in respiratory function under emergency conditions (when greater oxygen supply is necessary) may be detrimental to safe driving." 49 C.F.R. Pt. 391, App. A, II, E (2). The appendix further explains that "[t]here are many conditions that interfere with oxygen exchange and may result in incapacitation, including emphysema, chronic asthma, carcinoma, tuberculosis, chronic bronchitis, and sleep apnea." *Id.* at E (3). See also *Parker v. Crete Carrier Corp.*, 158 F. Supp. 3d 813, 823 (D. Neb. 2016) (noting that two "expert" witnesses agreed that obstructive sleep apnea would qualify as a respiratory dysfunction as contemplated by the FMCSR); *Butler v. Washington Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 82 (D.C. Cir. 2017) (finding that the defendant-employer's "approach to sleep apnea—viewing it not as an automatic disqualifier, but as a condition that an employee must demonstrate is under control by use of a CPAP machine, . . .—strikes an eminently reasonable balance between the individual interests of employees with disabilities and the safety standard 'required or necessitated by . . . ' regulation).

Plaintiff cites no Alabama law holding that a driver with untreated sleep apnea, or any respiratory condition for that matter, is incompetent to drive a tractor trailer. Pl's Resp. (Doc. 50) at 14-16. Rather, he relies exclusively on the FMCSR provision. *Id.* However, in *Dixon v. Hot Shot Express*, 44 So.3d 1082, 1084-85 (Ala. 2010), the Alabama Supreme Court expressly rejected a proposed jury instruction that "[u]nder Alabama law, no person may operate a commercial motor vehicle in this state in violation of the Federal Motor Carrier Safety Regulations as prescribed by the U.S. Department of Transportation." Alabama's highest court held that the FMCSR do not preempt Alabama law and "[f]ailing to fulfill a federal regulatory responsibility does not equate to liability under state law." *Id.* at 1090. *See also, Lohr v. Zehner*, Civil Action No. 2:12cv533-MHT, 2014 WL 2832192, at *8 (M.D. Ala. 2014) (Thompson J.) (citing *Osborne Truck Lines, Inc. v. Langston*, 454 So.2d 1317, 1326 (Ala. 1984) and explaining that "Alabama law does not recognize negligence-per-se cause of action based on the Federal Motor Carrier Safety Regulations, but such regulations may be considered by a jury to consider whether a defendant exercised appropriate care for the situation").

In light of its ruling in *Dixon*, the undersigned predicts that the Alabama Supreme Court would not hold that untreated sleep apnea, standing alone, is sufficient to establish that a commercial driver is incompetent to operate a truck. Accordingly, because plaintiff relies exclusively on Cox's untreated sleep apnea to establish incompetency, he has failed to make a factual showing sufficient to establish this element under Alabama

law.

   *(2) Knowledge of Incompetency*

   Even if plaintiff's evidence of Cox's untreated sleep apnea were sufficient to reach a jury on the incompetency issue, his negligent/wanton hiring claim still fails for lack of evidence showing that that Daybreak knew or should have known of its driver's medical condition.  Plaintiff again turns to the FMCSR and argues that under 49 C.F.R. § 391.23(a)(2), Daybreak had a duty to perform an investigation of the driver's "safety performance history with Department of Transportation regulated employers during the preceding three years," and that Daybreak has no record showing that it contacted Mountaire about Cox.  Pl's Resp. (Doc. 50) at 17.  Plaintiff argues that this lack of evidence is sufficient to impute knowledge of Cox's sleep apnea to Daybreak. *Id.* at 17-18, 20.

   First, plaintiff misapprehends the FMCSR provision that he relies upon.  Section 391.23(a)(2) requires a prospective employer to obtain information concerning a driver's "safety performance history" such as previous accidents or alcohol and controlled substance violations.  49 C.F.R. §§ 391.23 (d); 391.23 (e).  It does not require a prospective employer to obtain a driver's past medical history.  *Id.*  After thoroughly examining the regulations, the Southern District of Alabama directly held that there is no provision in the FMCSR "which requires motor carriers to obtain an applicant's medical records."  *Whatley v. Merit Distribution Services*, 191 F.R.D. 655, 659 (S.D. Ala. 2000).

Rather, "the FMCSR provides for a medical certification process. Under §391.41 and § 391.43 of the regulations, a medical examiner is directed to perform a physical examination of an applicant to determine if he or she meets the physical qualifications outlined in the regulations, and thereafter, the examiner issues a 'certification.'" *Id.* This medical certification process, not the "safety performance history" check under § 391.23(a)(2), is the method by which the FMCSR achieve the underlying objective of the Federal Motor Carrier Safety Act to "ensure that the 'physical condition of operators of commercial motor vehicles is adequate to enable them to operate such vehicles safely.'" *Whatley*, 191 F.R.D. at 658-659 (quoting 49 U.S.C. § 31136(a), (a)(3)).

Here, the undisputed evidence shows that Cox was medically certified to drive for Daybreak. (Doc. 48-2) at 27, 28. Although plaintiff argues that this medical clearance was meaningless because Cox "failed to disclose and/or actively deceived his physicians about his prior sleep apnea diagnosis," (Doc. 50) at 16, he does not dispute that Cox was, in fact, medically certified to drive. Contrary to plaintiff's argument, § 391.23(a)(2) imposes no duty on Daybreak to go beyond the medical certification process and obtain a prospective driver's medical history from previous employers. *Whatley*, 191 F.R.D. at 658-659.

In addition, plaintiff's evidence on the knowledge element runs into the same problem as his evidence on incompetency. Plaintiff points to no Alabama law holding that an employer's failure to document a request for information from an applicant's third

17

previous employer results in imputing knowledge of everything known by that previous employer about the applicant. Plaintiff relies exclusively on the FMCSR for this supposed rule. Considering the Alabama Supreme Court's holding in *Dixon* that "[f]ailing to fulfill a federal regulatory responsibility does not equate to liability under state law," the undersigned predicts that Alabama would not impose the strict duty to investigate and document a driver's medical history with previous employers proposed by plaintiff's interpretation of the FMCSR. *Id.* at 1090. Therefore, plaintiff's evidence that Daybreak has no records of a "safety performance history" check with Mountaire is insufficient as a matter of law to establish that Daybreak knew or should have known of Cox's sleep apnea.

*(3) Causation*

The Alabama Supreme Court explains, in the context of a negligent entrustment claim, that "liability for entrustment of a vehicle depends upon an injury proximately resulting from the incompetency of the entrustee." *Edwards*, 926 So. 2d at 325. The same causation rule would apply in a negligent hiring claim involving a driver. Here, plaintiff relies exclusively on Cox's untreated sleep apnea to establish incompetency. Pl's Resp. (Doc. 50) at 14-16. Therefore, plaintiff would have to show that the underlying accident was somehow caused by Cox's sleep apnea.

Plaintiff has pointed to no evidence in the summary judgment record showing that Cox's sleep apnea had anything to do with the accident. Instead, he argues that "but for

Daybreak Express' hiring a disqualified driver, the accident that took the life of Plaintiff's decedent would not have occurred." Pl's resp. (Doc. 50) at 18.  In other words, plaintiff argues that once Daybreak hired Cox, it was liable for anything he did behind the wheel whether related to his sleep apnea or not.  This broad "but for" causation is insufficient to satisfy the causation element of a negligent hiring claim under Alabama law.

**IV.        CONCLUSION**

In conclusion, for the reasons stated above, the undersigned Magistrate Judge

RECOMMENDS that Defendants Daybreak Express' and Sherwood Britt Cox's Motion for Partial Summary Judgment (Doc. 48) be GRANTED and that the following counts be DISMISSED:

Count Two – Negligent/Wanton Maintenance

Count Three – Negligent/Wanton Inspection

Count Four – Negligent/Wanton Repair

Count Six – Negligent/Wanton Supervision

Count Seven – Negligent/Wanton Hiring

Count Eight – Negligent/Wanton Training

Count Nine – Claim for wrongful death based on negligent/wanton maintenance; negligent/wanton inspection; negligent/wanton repair; negligent/wanton supervision; wanton hiring; and negligent/wanton training.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 5, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 19th day of February, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE